UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| PAULETTE BRUZIK<br><br>Plaintiff,<br><br>v.<br><br>HARTFORD HEALTHCARE-<br>GO HEALTH URGENT CARE, LLC<br><br>Defendant. | CIVIL ACTION NUMBER:<br>____________________<br><br>JURY TRIAL DEMANDED |

**COMPLAINT AND JURY DEMAND**

**PARTIES**

1. The Plaintiff, Paulette Bruzik ("Ms. Bruzik" or the "Plaintiff"), is a female resident of the State of Connecticut. During the time relevant to this Complaint, Ms. Bruzik was a resident of Connecticut. Ms. Bruzik currently lives in Bristol, CT.

2. Defendant Hartford Healthcare-Go Health Urgent Care, LLC (the "Company" or "Defendant") is a foreign for-profit corporation doing business in the State of Connecticut. Defendant is incorporated in Delaware, and its principal office is located at 5555 Glennridge Connector Suite 700, Atlanta, GA 30342. The Defendant is registered with Connecticut's Secretary of State as a foreign corporation doing business in Connecticut.

**JURISDICTION AND VENUE**

3. This court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1331 because Plaintiff has brought claims pursuant to the Americans with Disabilities Act and the Family and Medical Leave Act. The court may exercise supplemental jurisdiction over the Plaintiff's state law claims. 28 U.S.C. §1367.

4. The Court has personal jurisdiction over the Defendant because the Defendant has engaged in and transacted business in the State of Connecticut, including by managing and/or operating a business at 383 W Main Street, Avon, CT 06001 and/or employing the Plaintiff in Connecticut, and Plaintiff's causes of action stem largely from Defendant's business transactions within the State of Connecticut. Indeed, the Plaintiff was employed by the Defendant in the State of Connecticut, managed and supervised by the Defendant in the State of Connecticut, discriminated against by the Defendant in the State of Connecticut, and terminated by the Defendant in the State of Connecticut.

5. Venue is appropriate in the District of Connecticut as the acts or omissions giving rise to the claims in this Complaint occurred in the District of Connecticut.

## STATEMENT OF FACTS

6. In or around July 2023, Ms. Bruzik was hired by the Company as a medical assistant.

7. At all relevant times, Ms. Bruzik primarily worked in the Company's Avon, Connecticut location but also served as a floater for other Company locations within the State of Connecticut.

8. At all relevant times, the Company employed 15 or more individuals for 20 or more calendar weeks within the prior 12 months.

9. As such, the Company was an employer under the Americans with Disabilities Act (the "ADA") and the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. § 46(a)-60 (the "CTFEPA").

10. At all relevant times, the Company was an entity engaged in interstate commerce and employed 50 or more employees for each working day during 20 or more weeks during the relevant calendar years.

11. As such, the Company was an employer under the federal Family and Medical Leave Act ("FMLA").

12. At all relevant times, Ms. Bruzik suffered from (and still suffers from) chronic arthritis and a chronic autoimmune disorder.

13. At all relevant times, Ms. Bruzik's arthritis was an impairment that substantially limited one or more of her major life activities including, but not limited to, walking, climbing stairs, exercising, bending, lifting, and caring for herself. Further, at all relevant times, Ms. Bruzik's arthritis was an impairment which substantially limited one or more of her major bodily functions, including her immune and musculoskeletal functions.

14. Accordingly, at all relevant times, Ms. Bruzik's arthritis was a disability, and she was (and still is) a qualified individual with a disability under federal and state law.

15. Ms. Bruzik's autoimmune disorder was an impairment that substantially limited one or more of her major life activities including, but not limited to, walking, climbing stairs, sleeping, bending, lifting, and caring for herself. Further, Ms. Bruzik's autoimmune disorder was an impairment which substantially limited one or more of her major bodily functions, including her immunological functions.

16. Accordingly, at all relevant times, Ms. Bruzik's autoimmune disorder was a disability, and she was (and still is) a qualified individual with a disability under federal and state law.

17. At all relevant times, Ms. Bruzik was a qualified employee, and her job performance was satisfactory.

18. Upon Ms. Bruzik's hiring, her supervisor was Rebecca Kei ("Kei").

19. Jessica Viveros-Perez ("Viveros-Perez"), regional manager for the Avon and Farmington area, also had supervisory authority over Ms. Bruzik.

20. Upon information and belief, during the period of Ms. Bruzik's employment, Viveros-Perez did not have a disability, was not disabled, was not regarded by the Company as disabled, and had not requested and/or utilized reasonable disability-related accommodations.

21. Noemi Veintidos ("Veintidos"), regional manager for the Bristol and Torrington area also had supervisory authority over Ms. Bruzik.

22. Upon information and belief, during the period of Ms. Bruzik's employment, Veintidos did not have a disability, was not disabled, was not regarded by the Company as disabled, and had not requested and/or utilized reasonable disability-related accommodation.

23. Shortly after being hired, Ms. Bruzik disclosed to Kei that she suffered from an autoimmune disorder and arthritis, which during flare ups caused severe joint pain.

24. Ms. Bruzik also requested the reasonable disability-related accommodation of taking occasional days off when experiencing a flare up of symptoms.

25. Kei denied Ms. Bruzik's request and claimed that Ms. Bruzik had not been employed by the Company long enough to qualify for the accommodation of intermittent leave.

26. In doing so, the Company improperly denied Ms. Bruzik's request for a disability-related accommodation without engaging in an interactive dialogue as required by state and federal law.

27. Therefore, throughout the summer of 2023, Ms. Bruzik worked despite experiencing significant joint pain and wanting to take occasional days off for treatment and recovery.

28. On the occasional days during which Ms. Bruzik's disability-related pain was unbearable, she contacted Kei and Catalina Burgos ("Burgos"), scheduler, disclosed her symptoms, and requested the day off to rest and recuperate.

29. Upon information and belief, during the period of Ms. Bruzik's employment, Burgos did not have a disability, was not disabled, was not regarded by the Company as disabled, and had not requested and/or utilized reasonable disability-related accommodation.

30. Ms. Bruzik's requests were purportedly granted.

31. In or around September 2023, Kei left the Company.

32. In or around October 2023, Ashley Watkins ("Watkins"), staffing coordinator, became Ms. Bruzik's new direct supervisor.

33. Upon information and belief, during the period of Ms. Bruzik's employment, Watkins did not have a disability, was not disabled, was not regarded by the Company as disabled, and had not requested and/or utilized reasonable disability-related accommodations.

34. In or around October through December 2023, Ms. Bruzik again occasionally experienced a flare up of disability-related symptoms, disclosed these symptoms and associated conditions to Watkins and Burgos, and requested from them the reasonable disability-related accommodations of these days off as reasonable accommodations.

35. These requests were purportedly approved.

36. However, on or around January 2, 2024, Veintidos wrote Ms. Bruzik up for alleged unexcused absences. This constituted an improper retaliatory adverse action in response

to Ms. Bruzik utilizing disability-related accommodations, and by extension also constituted an improper retroactive revocation and/or rejection of the disability accommodation(s) requested by Ms. Bruzik.

37. Shortly thereafter, Ms. Bruzik met with Veintidos, during which Ms. Bruzik raised protected concerns, explaining to her that each of these supposedly unexcused absences for which she was disciplined were on days on which she (Ms. Bruzik) was experiencing a flare up of disability-related symptoms and had requested time off as an accommodation, which was purportedly approved.

38. Veintidos claimed that the write-up could not be revoked, thereby dismissing Ms. Bruzik's protected concerns.

39. Later that month, Ms. Bruzik experienced a severe flareup of her autoimmune disorder, which caused heightened fatigue and joint pain and she requested two (2) days off, which were approved.

40. On or around February 5, 2024, Veintidos issued Ms. Bruzik another written warning for absences, including because of absences on days Ms. Bruzik had requested off as a reasonable accommodation for her disability(ies).

41. Notably, this write up included dates in December 2023, which made no sense because, if the Company truly took issue with these absences more than a year before, the absences would have been cited in the (also improper) written warning issued in January 2024.

42. Shortly thereafter, Ms. Bruzik met with Veintidos and Viveros-Perez, during which she again raised protected concerns, explaining that her absences were previously approved accommodations related to her autoimmune disorder and related symptoms.

43. Viveros-Perez refused to revoke the discipline, but instructed Ms. Bruzik to apply for intermittent medical leave through the Company's Human Resources department.

44. Ms. Bruzik reached out to Human Resources and received the relevant paperwork to apply for an intermittent leave.

45. Ms. Bruzik's primary care physician then completed the FMLA paperwork, recommended Ms. Bruzik be granted up to three (3) days off per month, and timely provided it to the Company.

46. Shortly thereafter, the Company approved Ms. Bruzik's request, and she utilized this accommodation.

47. Notably, at all relevant times, the Company employed 50 or more employees within a 75-mile radius of where Ms. Bruzik worked.

48. Furthermore, as of in or around July 2024, Ms. Bruzik had been an employee for at least 12 months and had worked in excess of 1,250 hours during the preceding 12-month period.

49. Ms. Bruzik's autoimmune disorder was a serious health condition that caused periods of incapacity, required continuing treatment, and served as a legitimate basis for protected leave for FMLA.

50. As such, Ms. Bruzik was an eligible employee entitled to leave protected under the FMLA.

51. Therefore, Ms. Bruzik's disability-related accommodation request for time off was also a request for leave protected under the FMLA.

52. In or around September 2024, Unum, the Company's third-party leave provider, contacted Ms. Bruzik's primary care physician with recertification paperwork.

53. Around this time, the Company's management informed Ms. Bruzik that she should contact Burgos and Viveros-Perez when she requested time off as reasonable disability-related accommodations, which she began doing as instructed.

54. Ms. Bruzik's primary care physician submitted the relevant paperwork, and Ms. Bruzik's FMLA protected leave was approved.

55. During October 2024, Ms. Bruzik utilized approximately five (5) days off as a reasonable disability-related accommodation by contacting Burgos and Viveros-Perez as instructed and disclosing her disability-related flareups each time.

56. These days off were protected by the FMLA as well as constituting a disability-related accommodation.

57. Ms. Bruzik was not informed of any issue with these absences as they occurred.

58. In or around November 2024, Ms. Bruzik utilized approximately one (1) day off as a reasonable disability-related accommodation, which was again protected under the FMLA.

59. On or around November 20, 2024, Veintidos informed Ms. Bruzik that she was being terminated for alleged unexcused absences in supposed violation of the Company's Attendance Policy.

60. Therefore, Ms. Bruzik was involuntarily terminated from her position at the Company on or around November 20, 2024.

61. In or around late November 2024, Ms. Bruzik spoke with a Unum case manager to ask why her absences were marked as unexcused, despite the fact they were related to her disability-related symptoms, and that she followed the same procedure as previous months.

62. After looking into the matter, the Unum case manager agreed that the absences were indeed disability-related, should be considered protected leave that was not unexcused absences, and said Unum would let the Company know.

63. Upon information and belief, the Company was aware, and was later again made aware, that Ms. Bruzik's absences were protected under applicable law.

64. Shortly thereafter, Ms. Bruzik contacted Viveros-Perez and the Company's Human Resources department.

65. Viveros-Perez told Bruzik the Human Resources department would be reaching out to her.

66. However, Ms. Bruzik did not hear back from Viveros-Perez again, nor the Human Resources department, and her termination was not reversed.

67. Upon information and belief, Ms. Bruzik was replaced by an individual who is not disabled, is not regarded by the Company as disabled, and has not requested and/or utilized disability-related accommodations.

68. On or around April 9, 2025, the Plaintiff timely filed a Charge of Discrimination (the "Charge") with the Connecticut Commission on Human Rights and Opportunities ("CHRO"), which was cross filed with the Equal Employment Opportunity Commission ("EEOC").

69. On or around October 13, 2026, the State of Connecticut Commission on Human Rights and Opportunities released its jurisdiction for Ms. Bruzik's's Charge at her request so that she could pursue her claim in court.

70. Ms. Bruzik notified the EEOC of her intent to file a complaint in court and, accordingly, requested that the EEOC release jurisdiction and permit Ms. Bruzik to file in court.

71. The EEOC released its jurisdiction on Ms. Bruzik's Charge of Discrimination she filed against the Company and issued a Right to Sue notice on or around September 1, 2026.

72. This lawsuit is timely filed.

**COUNT I**

**(Interference with and Retaliation for Exercising Rights under the Family and Medical Leave Act – 29 U.S.C. §2615)**

**Plaintiff v. Defendant**

73. Ms. Bruzik incorporates all paragraphs above and below as if set forth fully herein.

74. During all relevant times, the Company was engaged in an industry affecting commerce and employed 50 or more employees for 20 or more calendar work weeks in each current and/or preceding calendar year.

75. As such, at all relevant times, the Defendant was an employer under the FMLA.

76. At all relevant times, the Defendant employed 50 or more employees within 75 miles of Ms. Bruzik's worksite.

77. Beginning in July 2024 and onward, Ms. Bruzik had worked for the Company for 12 or more months and had worked in excess of 1,250 hours within the past 12-month period.

78. As such, Ms. Bruzik was an eligible employee under the FMLA.

79. Ms. Bruzik suffered from one or more serious health conditions for which she received continuing care, including, but not limited to, her autoimmune disorder and arthritis.

80. Ms. Bruzik was entitled to FMLA leave.

81. Ms. Bruzik sought to exercise her rights under the FMLA, including by requesting and utilizing one or more leaves protected under the FMLA.

82. Specifically, Ms. Bruzik requested and utilized one or more FMLA leaves in the form of taking time off for disability-related recuperation beginning in or around July 2024.

83. Ms. Bruzik timely notified the Defendant that she would need FMLA leave and timely turned in all requested paperwork and information related to her FMLA leave requests and utilization of FMLA leave. The paperwork turned in by Ms. Bruzik was properly completed and timely submitted, and the leave(s) she utilized were approved and protected by the FMLA.

84. The Defendant interfered with Ms. Bruzik's rights under FMLA by counting Ms. Bruzik's FMLA-protected absences as unexcused, using the leave as a negative factor in the decision to terminate Ms. Bruzik, subjecting her to adverse employment actions for utilizing protected leave time, preventing her from using leave she wanted to use based on the retaliation, as well as the severe and pervasive harassing and hostile work environment she was subjected to; and/or the termination of Ms. Bruzik's employment.

85. The Defendant, including by and through its agents, retaliated and/or discriminated against Ms. Bruzik for requesting and/or utilizing FMLA leave by subjecting Ms. Bruzik to adverse actions, including, but not limited to, a hostile and harassing work environment, write ups, and the termination of Ms. Bruzik's employment.

86. The Defendant's actions, including Defendant's violations of the FMLA, were willful and undertaken in bad faith.

87. As a direct and proximate result of the Defendant's violation of the FMLA, Ms. Bruzik has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, other monetary harms, loss of earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

88. Ms. Bruzik seeks all damages to which she is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), other monetary damages, (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), injury to reputation, diminished earning capacity, liquidated (i.e. double) damages, interest, attorneys' fees, and costs.

**COUNT II**

**(Disability Discrimination and Failure to Accommodate in Violation of the Americans with Disabilities Act, 42 U.S.C. §§12101, et seq.)**

**Plaintiff v. Defendant**

89. Ms. Bruzik incorporates all paragraphs above and below as if set forth fully herein.

90. During all relevant times, the Defendant was an employer under the ADA because it employed more than 15 persons for 20 or more calendar weeks within the previous 12-month period.

91. Ms. Bruzik suffers (and at all relevant times suffered) from disabilities, including arthritis. Ms. Bruzik's arthritis was an impairment that substantially limited one or more of her major life activities, including walking, climbing stairs, exercising, bending, lifting, and caring for herself. It further substantially limited the operations of one or more of her major bodily functions, including her musculoskeletal function. Accordingly, at all relevant times, Ms. Bruzik's arthritis was a disability, and Ms. Bruzik was a qualified individual with a disability under the ADA.

92. Ms. Bruzik suffers (and at all relevant times suffered) from an autoimmune disorder. Ms. Bruzik's autoimmune disorder was an impairment that substantially limited one or more of her major life activities, including walking, climbing stairs, breathing, bending, and lifting. It further substantially limited the operations of one or more of her major bodily functions, including her musculoskeletal function. Accordingly, at all relevant times, Ms. Bruzik's autoimmune disorder was a disability, and Ms. Bruzik was a qualified individual with a disability under the ADA.

93. At all relevant times, Ms. Bruzik was a qualified employee and was capable of performing the essential functions of her job with or without one or more reasonable accommodations.

94. Ms. Bruzik disclosed her disabilities to the Defendant, and/or the Defendant was aware of Ms. Bruzik's disabilities, and/or the Defendant regarded Ms. Bruzik as disabled.

95. Ms. Bruzik requested and/or utilized disability-related reasonable accommodations that would have assisted him in performing the essential functions of her job. These requested reasonable accommodations included, but were not limited to, protected leaves of absence to rest and recuperate from her disability-related symptoms.

96. Ms. Bruzik's requested disability-related accommodations did not pose an undue burden on Defendant.

97. The Defendant discriminated against Ms. Bruzik due to her disabilities by subjecting Ms. Bruzik to adverse actions, including, but not limited to, a hostile and harassing work environment, unjustified written warnings, and terminating Ms. Bruzik's employment.

98. Additionally, the Company wrongfully denied and/or revoked disability-related accommodations requested by Ms. Bruzik. For example, the Company denied Ms. Bruzik's

initial request for disability-related time off. This denial was seemingly designed to prevent Ms. Bruzik from requesting and/or utilizing this accommodation in the future.

99. The Company improperly failed to engage in an interactive dialogue with Ms. Bruzik related to her requested accommodations and/or alternative accommodations.

100. Upon information and belief, the Company replaced Ms. Bruzik with a lesser or similarly qualified, non-disabled employee.

101. The Defendant's actions were willful, wanton, reckless, and/or involved a conscious disregard of the rights of Ms. Bruzik and/or conduct so reckless as to amount to such disregard.

102. As a direct and proximate result of the Defendant's violations of the ADA, Ms. Bruzik has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, other monetary harms, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

103. The Plaintiff seeks all damages to which she is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), damages for diminished earning capacity and injury to reputation, other monetary damages, emotional distress damages, additional compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, reinstatement with full seniority and benefits, and other nonpecuniary losses), punitive damages, attorneys' fees, interest, and costs.

**COUNT III**

**(Disability Discrimination and Failure to Accommodate in Violation of Conn. Gen. Stat. § 46a-60)**

**Plaintiff v. Defendant**

104. Ms. Bruzik incorporates all paragraphs above and below as if set forth fully herein.

105. At all relevant times, the Company employed four or more persons.

106. The Company is an employer under the definitions applicable to Conn. Gen. Stat. § 46a-60 because the Company employed four or more persons.

107. Ms. Bruzik suffers (and at all relevant times suffered) from disabilities, including arthritis and an autoimmune disorder. These disabilities are impairments that substantially limit one or more of her major life activities, including as set forth above. These disabilities further substantially limit the operations of one or more of her major bodily functions, including as set forth above. Accordingly, Ms. Bruzik's arthritis and autoimmune disorder were disabilities, and she is a qualified individual with a disability under the Conn. Gen. Stat. § 46a-60.

108. At all relevant times, Ms. Bruzik was a qualified employee and was capable of performing the essential functions of her job with or without one or more reasonable accommodations.

109. At all relevant times, Ms. Bruzik was a qualified individual with a disability.

110. Ms. Bruzik disclosed her disability to the Defendant, and/or the Defendant was aware of Ms. Bruzik's disabilities, and/or the Defendant regarded Ms. Bruzik as disabled.

111. Ms. Bruzik requested and/or utilized disability-related reasonable accommodations that would have assisted him in performing the essential functions of her job. These requested reasonable accommodations included, but were not limited to, time off to recuperate from her disability-related symptoms.

112. Ms. Bruzik's requested disability-related accommodations did not pose an undue burden on Defendant.

113. The Defendant discriminated against Ms. Bruzik due to her disability by subjecting Ms. Bruzik to adverse actions, including, but not limited to, a hostile and harassing work environment, and terminating Ms. Bruzik's employment because of the Plaintiff's disability.

114. Additionally, the Company wrongfully denied and/or revoked disability-related accommodations requested by Ms. Bruzik. For example, the Company denied Ms. Bruzik's initial request for disability-related time off. This appeared to be designed to prevent Ms. Bruzik from requesting and/or utilizing this accommodation in the future. The Company also constructively denied accommodations by disciplining Ms. Bruzik when she attempted to utilize accommodations.

115. The Company improperly failed to engage in an interactive dialogue with Ms. Bruzik related to her requested accommodations and/or alternative accommodations.

116. Upon information and belief, the Company replaced Ms. Bruzik with a lesser or similarly qualified, non-disabled employee.

117. The Defendant's actions were willful, wanton, reckless, and/or involved a conscious disregard of the rights of Ms. Bruzik and/or conduct so reckless to amount to such disregard.

118. As a direct and proximate result of the Defendant's violations of Conn. Gen. Stat. § 46a-60, Ms. Bruzik has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, other monetary harms, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

119. Ms. Bruzik seeks all damages to which she is entitled, including, but not limited to, lost compensation and benefits (including back pay and front pay), lost benefits, reduced

earning capacity, other financial damages, uncapped compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, reinstatement with full seniority and benefits, and other nonpecuniary losses), punitive damages, injury to reputation, interest, attorneys' fees, and costs.

## COUNT IV

## (Retaliation in Violation of the Americans with Disabilities Act, 42 U.S.C. §§12101, et seq.)

## Plaintiff v. Defendant

120. Ms. Bruzik incorporates all paragraphs above and below as if set forth fully herein.

121. Ms. Bruzik engaged in protected activity under the ADA, including, but not limited to requesting and/or utilizing reasonable accommodations for disabilities which were intended to allow Ms. Bruzik to perform the essential functions of her job and raising protected concerns opposing the Company's discriminatory and retaliatory practices, as well as its improper failure to provide accommodations.

122. The Defendant unlawfully coerced, intimidated, threatened, and/or interfered with Ms. Bruzik's exercising of, or enjoyment of, one or more rights granted by the ADA.

123. More specifically, the Defendant subjected Ms. Bruzik to adverse actions, including but not limited to, a severe and pervasive hostile, harassing, discriminatory work environment, denying Ms. Bruzik accommodations for her disabilities; unjustified write ups; and/or the termination of Ms. Bruzik's employment because she engaged in protected activity under the ADA.

124. The Defendant acted with malice and/or with reckless indifference to the federally protected rights of Ms. Bruzik.

125. As a direct and proximate result of the Defendant's violation of the ADA, Ms. Bruzik has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, other monetary harms, loss of earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

126. Ms. Bruzik seeks all damages to which she is entitled, including, but not limited to lost compensation and benefits (including, but not limited to, back pay and front pay), other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, reinstatement with full seniority and benefits, and other nonpecuniary losses), injury to reputation, diminished earning capacity, punitive damages, interest, attorneys' fees, and costs.

**COUNT V**

**(Retaliation in Violation of Conn. Gen. Stat. § 46a-60)**

**Plaintiff v. Defendant**

127. The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

128. The Plaintiff engaged in protected activity under Conn. Gen. Stat. § 46a-60, including, but not limited to, by requesting and/or utilizing one or more disability-related reasonable accommodations and raising protected concerns opposing the Company's discriminatory practices and retaliatory practices, as well as its improper failure to provide accommodations.

129. The Company retaliated against the Plaintiff and/or discriminated against the Plaintiff for engaging in protected activities, including opposing one or more acts or practices

made unlawful by Conn. Gen. Stat. § 46a-60, including by subjecting Ms. Bruzik to adverse actions, including, but not limited to, a hostile and harassing work environment, unjustified write ups, and the termination of Ms. Bruzik's employment in whole or in part because she engaged in protected activity.

130. The Defendant's actions were willful, wanton, reckless, and/or involved a conscious disregard of the rights of Ms. Bruzik and/or conduct so reckless to amount to such disregard.

131. As a direct and proximate result of the Company's violations of Conn. Gen. Stat. § 46-60, the Plaintiff has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, other monetary harms, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

132. The Plaintiff seeks all damages to which she is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), damages for diminished earning capacity and injury to reputation, other monetary damages, emotional distress damages, additional compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other nonpecuniary losses), reinstatement with full seniority and benefits, punitive damages, attorneys' fees, interest, and costs.

WHEREFORE, the Plaintiff, Paulette Bruzik, respectfully requests that this honorable court:

A. Schedule this matter for trial by jury;

B. Find the Defendant liable on all counts;

C. Award the Plaintiff her lost compensation and benefits (including, but not limited to, back pay and front pay),

D. Award the Plaintiff other monetary damages, including, but not limited to, damages for her diminished earning capacity and injury to reputation;

E. Award the Plaintiff emotional distress damages;

F. Award the Plaintiff uncapped compensatory damages, including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses;

G. Award the Plaintiff liquidated damages;

H. Award the Plaintiff punitive damages;

I. Award the Plaintiff her reasonable attorneys' fees;

J. Award the Plaintiff reinstatement and restoration to her prior position with full seniority, pay, and benefits;

K. Award the Plaintiff interest and costs;

L. Award the Plaintiff all other damages to which she is entitled; and

M. Grant such further relief as is just and equitable.

Respectfully Submitted,

PAULETTE BRUZIK

By her attorneys,

THE LAW OFFICES OF WYATT & ASSOCIATES P.L.L.C

Date: 11/20/2026 By: */s/ Lillie Goldman*

Lillie Goldman
Lillie@wyattelgaservices.com
CT State Bar:446059
D. Conn. No.: 31868

Benjamin J. Wyatt
BWyatt@Wyattlegalservices.com
CT State Bar: 437487
D. Conn. No.: ct29994

Michael R. Varraso
mvarraso@wyattlegalservices.com
CT State Bar: 439521
D. Conn. No.: ct307777

The Law Offices of Wyatt & Associates, P.L.L.C.
17 Elm Street, Suite C211
Keene, NH 03431
Telephone: (603) 357-1111
Facsimile: (603) 685-2868